# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| ORVEL P. HALE | CIVIL ACTION NO. 6:15-1803 |
| VERSUS | MAGISTRATE JUDGE WHITEHURST |
| WOOD GROUP PSN, INC., ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING AND ORDER

Pending before the Court is the Motion Reurging and Seeking a Pretrial Ruling on Orvel P. Hale's Motion in Limine to Exclude Certain Evidence [Doc. 100] filed by the plaintiff, Orvel P. Hale. The motion is opposed by defendants ENI Operating Co., Inc., Bordelon Marine, LLC, and Wood Group PSN, Inc. [Doc. 110]. For the following reasons, the motion is GRANTED.

The instant case is relatively simple in its factual presentation. The plaintiff alleges he was injured during a basket transfer from the M/V WES BORDELON to the Vermilion 313C on June 3, 2014. The plaintiff has alleged claims of negligence against the various defendants for, *inter alia*, failing to provide hand-held radios; failing to properly conduct a job safety analysis; and directing that the personnel transfer go forward in bad weather. The defendants have asserted there is no liability on their parts or, alternatively, that the plaintiff was injured because of his own

contributory negligence.

The pending motion seeks to exclude the plaintiff's post-accident urine drug screen test on grounds the evidence is not relevant to any of the issues in the case and the introduction of such evidence will substantially prejudice the plaintiff despite having no probative value. The plaintiff originally urged this Court to exclude the drug screen in his Motion to Exclude Certain Evidence [Doc. 57]. After consideration of the briefs filed and discussion with counsel at the pre-trial conference, and after indicating that the Court was inclined to grant the motion, the Court ultimately deferred ruling on the motion until trial. Following the pre-trial conference, however, the plaintiff re-urges the motion, asking the Court to issue a pretrial ruling on grounds that deferring will place the plaintiff at an unfair advantage in his trial preparation. The plaintiff argues that several trial issues – including jury selection, opening statements, the order of witnesses, and the presentation of toxicology evidence – are impacted by the Court's determination as to whether the drug screen will be allowed into evidence. In response, the defendants challenge the plaintiff's effort to "exclude all evidence regarding Hale's <u>documented opioid and amphetamine use</u>" (emphasis added). For the reasons that follow, this Court will GRANT the motion, and exclude the post-accident drug screen – and any reference thereto – at issue.

This Court's determination as to the admissibility of the plaintiff's urine drug screen is guided by the principles contained in Rule 401 and 403 of the Federal Rules of Evidence. Rule 401 states:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401. Rule 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Here, the plaintiff's post-accident urine drug screen was positive for amphetamine (the plaintiff's prescribed Adderall medication) and opiates (the plaintiff's prescribed Lortab medication). In discovery responses, the defendants have stated that:

> Orvel P. Hale did not use proper technique to either step away from the personnel basket or secure himself to the personnel basket, did not use his training likely <u>because of his drug affected cognition</u>, and he left the personnel basket while it was elevated above the deck of the boat.[1]

---

[1] *See* Interrogatory No. 19 and Defendants' Supplemental and Amending Answer, attached as Exhibit 1 to the plaintiff's original Motion in Limine, Doc. 57.

Based on the foregoing, it is clear that the defendant's strategy in avoiding liability for the damages occasioned by the basket transfer hinges, at least in part, on the plaintiff's use of his prescription drugs as a *cause* of the accident at issue.

It is undisputed, however, that both the plaintiff's and defendants' experts agree that impairment cannot be determined by looking at a drug screen. Thus, the drug screen results in this case cannot be used to prove the plaintiff's "drug affected cognition," as suggested by the defendants in their discovery response.

In *Fontenot v. Rakin*, 2017 WL 710955, at *1 (W.D. La. Feb. 21, 2017), plaintiff sustained bodily injuries in an automobile accident for which she was treated at an area hospital. She subsequently filed suit in state court, and the matter was removed to this Court. Approximately one year later, through the course of discovery, defendants learned that Fontenot underwent a urine drug screen on the evening of the accident, approximately six or seven hours after arriving at the hospital for treatment. The drug screen was positive for the presence of THC, benzodiazepines, methadone and opiates.

The plaintiff filed a motion in limine seeking to exclude "any and all evidence or inference to the use of illicit or nonprescription drugs, including the drug screen from Rapides Regional Medical Center." *Fontenot*, 2017 WL 710955, at *2. Defendants' expert toxicologist testified via deposition that the positive test results

from the urine drug screen were indicative of drug use prior to the time of the test, but not impairment or intoxication, as follows: "I would, again, say it does not measure the level of intoxication, it is not intended to. It's a measurement of a drug and/or its metabolite in the urine which is not indicated by itself to indicate intoxication." *Id.*

In ruling that any reference to the lab report regarding the use of illegal drugs was to be excluded, the court stated:

> Although the laboratory report establishes use of marijuana and methadone, that is all it establishes. Whether that evidence of Fontenot's non-prescription drug is relevant must be determined by asking whether the report has a tendency to make a fact more or less probable than it would be without the evidence and whether the fact is of consequence in determining this action. Fed.R.Evid. 401.
>
> [ . . . ]
>
> ***Whether Fontenot was intoxicated as a result of using the two illicit, non-prescription drugs cannot be established from the report alone. As observed by Dr. George, the urine drug screen does not quantify the amount of drugs in one's system and cannot be used to determine impairment or intoxication. Further, what little probative value there may be, if any, is substantially outweighed by the potential for "unfair prejudice, confusing the issues, and/or misleading the jury."*** Fed.R.Evid. 403. Therefore, any reference to the portion of the laboratory report regarding the use of illicit, non-prescription drugs shall be excluded. Furthermore, as there is no other evidence in the record regarding the use of illicit or non-prescription drugs prior to the accident, no reference or inference of such may be made during trial of this matter.

*Id.* at *3 (emphasis added).

At issue in the instant case is the use, and effect, of two prescribed drugs taken by the plaintiff. Similar to the expert in *Fontenot*, both experts in this matter have opined that impairment cannot be determined by looking at the plaintiff's urine drug screen. Thus, the defendants concede that their expert cannot establish that the plaintiff was cognitively impaired by the prescribed medications that he takes, only that the plaintiff took the medications prior to his accident.

Defendant's argument that the urine drug screen is nevertheless relevant to the issue of the plaintiff's contributory negligence is unpersuasive. Defendants apparently intend to argue a *causal connection* between the plaintiff's ingestion of his prescribed medications and his injuries. Defendants argued in their Joint Pre-Trial Order and at the pre-trial conference that the plaintiff's failure to properly hold onto the personnel basket caused his injuries, and that he failed to properly hold onto the basket because he was impaired by his medications. However, to date, defendants have failed to identify any witness, lay or expert, who will offer testimony supporting their argument that plaintiff was actually impaired due to his use of prescription medication. Additionally, even if this Court were to assume that the plaintiff did not properly hold onto the basket – a disputed factual issue, to be sure – the defendants have set forth no evidence heretofore that the manner in which the plaintiff was holding onto the basket <u>caused</u> the crane operator to lift the basket in the manner in

6

which he did so. While the manner in which the plaintiff was holding onto the basket may be relevant to, say, the plaintiff's mitigation of damages, there is no causal link – nor have the defendants demonstrated one in their briefing – between the plaintiff's ingestion of his prescribed medication and manner in which the personnel basket was lifted.

Nor can the urine drug screen provide any probative evidence concerning the plaintiff's actions or inactions at the time of the accident. The experts are in agreement that whether the plaintiff was impaired as a result of taking his two prescribed medications cannot be established from the report alone. More importantly, little probative value there may be, if any, is substantially outweighed by the potential for "unfair prejudice, confusing the issues, and/or misleading the jury." Fed.R.Evid. 403. Indeed, apparent from the recent filing of the defendants is their continued reliance on the history of opioid use by the plaintiff, as indicated by their attempts to introduce the plaintiff's history of prescription medication. This Court has already ruled that the plaintiff's prescription history is not admissible at trial.

The defendants cite to the case of *Harris v. Kabota Tractor Corp.*, 2006 WL 2734460 (W.D. La. 2006) in support of their argument. That case, however, is readily distinguishable. In *Harris*, the plaintiff was attempting to remove a rotary tiller from

a tractor manufactured by the defendant Kubota when his leg became entangled in the tiller. As a result of extensive injuries, Harris's leg was amputated. A urinalysis performed after the accident indicated that Harris tested positive for cocaine metabolites and cannabinoids, byproducts of the body's use of cocaine and marijuana.

In ruling that the urinalysis results were admissible at trial, the court stated:

> ***Thus, evidence of drug use during the week of the accident is highly probative of Harris's ability to operate and remove dangerous components from a tractor while the tractor was in operation.*** This evidence illuminates Harris's "ability to react, perceive and reason." Further, although the urinalysis results will likely have an adverse effect on Harris's case, such prejudice cannot be deemed unfair, as Harris's possible impairment provides a basis for a finding of contributory negligence. In short, the probative value of the evidence is not substantially outweighed by the prejudice it may cause. Hence, the test results are relevant, probative, and admissible in this case.

*Harris*, 2006 WL 2734460, at *3 (emphasis added) (internal citations omitted).

*Harris* is distinguishable because the activity in which Harris was participating required cognition and focus, as well as the operation of heavy machinery. In short, the *plaintiff's actions* had a direct impact on how he fared during the accident, and the fact that he may or may not have used illicit drugs close in time to the accident was found, by the court, to be more probative than prejudicial. Here, in contrast, the plaintiff was not operating heavy machinery or doing any task that required heightened cognition. *Rather, the plaintiff was a passenger in a personnel basket*

*that was being operated and controlled by other people.*

The defendants argue the plaintiff's positive urine drug screen is also relevant to the issue of the plaintiff's credibility. The defendants intend to argue that despite the fact that the plaintiff has testified he took his medications the night before the accident and then took Lortab following the accident, the evidence will show the plaintiff also took Lortab the morning of the accident. When the plaintiff took his medication is clearly a disputed factual issue. However, even assuming that the plaintiff took Lortab the morning of the accident, as the defendant contends, the Court's findings are not altered, because the fact remains that the urine drug screen cannot indicate any measure of the impairment at the time of the accident. Therefore, the drug screen is not probative of the *cause* of the accident in question.

To the extent the defendant argues the plaintiff's urine drug screen is relevant to the issues of the plaintiff's claims for lost wages and past and future medical expenses, this Court has already ruled the plaintiff's history of prescriptions is inadmissible, which pretermits a discussion of any relevance to these claims.

Finally, to the extent the plaintiff's positive urine drug test could be said to be probative of any issue in this case – a finding this Court does not make – under the balancing test of Rule 403, the Court concludes such probative value is substantially outweighed by the potential for "unfair prejudice, confusing the issues, and/or

9

misleading the jury."

One final issue the Court wishes to address is the defendant's suggestion that the Court, in excluding the urine drug screen, is engaging in fact-finding prior to trial. At the pre-trial conference, this Court discussed the drug screen and the Court's concerns regarding its admission into evidence and gave the parties the benefit of her thoughts regarding the balancing test required by Rule 403. Nothing stated at the pre-trial conference constituted fact-finding or a ruling of any kind. Rather, this Court merely engaged in a discussion of the facts that are already known in this case, and the Court's concern that allowing the urine drug screen into evidence would irreparably prejudice the jury. Those concerns are encapsulated in this Ruling.

Thus, for the foregoing reasons, the Motion to Exclude Certain Evidence [Doc. 57] and the Motion Reurging and Seeking a Pretrial Ruling on Orvel P. Hale's Motion in Limine to Exclude Certain Evidence [Doc. 100] are GRANTED, and the plaintiff's post-accident urine drug screen, as well as any reference thereto, are excluded at trial.

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 12th day of January, 2018.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**