# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| **ORVEL P. HALE** | **CIVIL ACTION NO. 6:15-1803** |
| **VERSUS** | **MAGISTRATE JUDGE WHITEHURST** |
| **WOOD GROUP PSN, INC., ET AL.** | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING

Before the Court is the Rule 59 Motion of defendants, ENI US Operating Co., Inc., Bordelon Marine, LLC, and Wood Group PSN, Inc., for a New Trial on Damages, or Alternatively, for Remittitur with respect to the Judgment entered on February 1, 2018 [Doc. 139]. Defendants asked for a stay on the execution of the Judgment pending disposition of the pending motion pursuant to Rule 62(b), and on February 22, 2018, the court granted the motion to stay [Doc. 146]. Plaintiff, Orvel P. Hale, opposes the motion [Rec. Doc. 155], and defendants filed a Reply brief [Doc. 161]. Plaintiff then filed a Motion For Leave to File a Sur-Reply Brief [Doc. 165], which is herein GRANTED. the following reasons, the defendants' motion for new trial and/or remittitur is DENIED.

## I. Background

The plaintiff, Orvel P. Hale, who was employed by Oceaneering International,

Inc.'s Asset Integrity Inspection Business Unit, alleged that he sustained personal injuries while transferring via personnel basket from the M/V WES BORDELON, an offshore supply vessel owned and operated by Bordelon Marine, LLC, to ENI's unmanned, fixed platform, the Vermilion 313C, which was located offshore Louisiana. At the time of the incident, ENI was the leaseholder and operator of Vermilion 313B, C and D fixed platforms, offshore Louisiana; Vermilion 313C was an unmanned platform on which was mounted a pedestal crane. ENI contracted with Oceaneering International, Inc. for Oceaneering to perform inspections, materials testing, and integrity management services for its assets, including Vermilion 313C, in which the parties agreed that Oceaneering International, Inc. was an independent contractor. Mr. Hale was employed by Oceaneering as a Level I Erosion/Corrosion Technician. ENI contracted with Bordelon Marine, LLC to provide an offshore supply vessel, the M/V WES BORDELON, for marine transportation in support of services for Vermilion 313B, C, and D.

The matter was tried by a jury on January 22-26 and January 29-30, 2018 [Doc. 117-121, 127-28]. The medical testimony at trial showed that Mr. Hale suffered from a disc bulge at L4-5 and disc herniation at L5-S1 caused by an eight to ten foot fall onto his back. Hale's axial mechanical low back pain with radiation into his left lower extremity was treated conservatively with anti-inflammatory medications,

physical therapy, and bilateral L5-S1 transforaminal epidural steroid injections with some pain relief. Subsequently, Hale underwent a bilateral L5-S1, transforaminal lumbar interbody fusion with permanent placement of bilateral rods and pedicle screw instrumentation. Hale was given a fifteen percent (15%) permanent partial impairment rating due to his lumbar injury, surgical fusion, and residual ongoing pain complaints.

The medical testimony at trial also showed that Hale suffered from a disc bulge at C3-4, disc protrusion (ruptured disc) at C5-6, and prominent disc extrusion at C6-7 caused by the fall onto his back. Hale was treated conservatively for his neck injury with anti-inflammatory medications, physical therapy, and epidural steroid injections with some pain relief. Subsequently, Hale underwent surgery for his C6-7 disc extrusion with a C-7 right arm radiculopathy. The surgical procedure that was performed was a right C6-7 anterior cervical discectomy, bilateral foraminotomies, and total disc arthroplast using a Mobile-C mechanical device. Subsequently, Hale was given a fifteen percent (15%) permanent partial impairment for his neck injury and resultant residual ongoing neck pain. Due to Hale's cervical surgery, Hale has a 24% risk of an additional cervical surgery within ten years as a result of the development of adjacent segment disease.

Hale also suffered from a T7-8 disc protrusion caused by the fall. Again, Hale

was treated conservatively with anti-inflammatory medications and two epidural steroid injections. He then underwent two medial branch nerve blocks, all of which provided very little relief from his intrascapular pain. At the time of trial, Hale had been given three possible extreme thoracic surgical options with each surgical procedure having a high rate of morbidity and/or paralysis: (1) transthoracic discectomy surgery; (2) lateral extra cavity approach surgery; or (3) posterior thoracic approach surgery. Hale's other treatment options, if Hale declines his surgery alternatives on the basis of risk versus reward, were to undergo, for his lifetime, chronic pain management consisting of the insertion of an intrathecal pump to transmit narcotics directly into his spinal fluid, or the placement of a spinal cord stimulator to interfere with the pain signals sent to his brain, or undergo up to three epidural steroid injections a year for the remainder of his lifetime.

At the time of trial, Hale had not reached maximum medical improvement related to his thoracic spine injuries and intrascapular pain complaints, which Hale described as excruciating. He developed chronic pain syndrome due to his ongoing intrascapular pain complaints.

Hale was assessed a 30% permanent partial impairment rating to his body as a whole. Hale's physical activity restrictions were to avoid pushing, pulling, and lifting anything greater than 20 pounds. Hale is prevented from ever working

offshore in the future and at the time of trial, Mr. Hale had not been released to perform any work due to his thoracic and intrascapular pain complaints. Hale's vocational rehabilitation counselor determined that Hale was vocationally disabled due to his thoracic and intrascapular pain complaints, and Hale had not reached maximum medical improvement related to his thoracic spine injuries. Hale's injuries also resulted in cessation of his previous recreational pursuits of golf, hunting, fishing, 4-wheeler riding, and archery. His resultant chronic pain syndrome caused severe strains upon his personal relationships with his disabled daughter and also his son.

On January 30, 2018, the jury returned a verdict for plaintiff Orvel P. Hale in the total amount of $3,238,666.02 – with 10% comparative fault in the amount of $323,866.60 – and against defendants, Wood Group PSN, Inc., Bordelon Marine, LLC and ENI U.S. Operating Co., Inc. On February 1, 2018, the Court entered a judgment for plaintiff on all claims [Doc. 137]. The Judgment reads in pertinent part as follows:

> In accord with the jury verdict rendered on the 30th day of January, 2018,
>
> **IT IS ORDERED** that judgment be and is hereby entered in favor of plaintiff, Orvel P. Hale, and against defendant, Wood Group PSN, Inc., in the amount of One Million Nine Hundred Forty-Three Thousand, One Hundred and Ninety-Nine Dollars and 61 Cents ($1,943,199.61) with

pre-judgment interest from the date of judicial demand to the date of entry of judgment at the Louisiana rate of judicial interest and post-judgment interest at the rate provided for by Title 28, United States Code, Section 1961, from date of entry of judgment until paid.

**IT IS FURTHER ORDERED** that judgment be and is hereby entered in favor of plaintiff, Orvel P. Hale, and against defendant, Bordelon Marine, LLC, in the amount of Six Hundred Forty-Seven Thousand, Seven Hundred Thirty-Three Dollars and 20 Cents ($647,733.20) with pre-judgment interest from the date of judicial demand to the date of entry of judgment at the Louisiana rate of judicial interest and post-judgment interest at the rate provided for by Title 28, United States Code, Section 1961, from date of entry of judgment until paid.

**IT IS FURTHER ORDERED** that judgment be and is hereby entered in favor of plaintiff, Orvel P. Hale, and against defendant, ENI U.S. Operating Co., Inc., in the amount of Three Hundred Twenty-Three Thousand Eight Hundred Sixty-Six Dollars and 60 Cents ($323,866.60) with pre-judgment interest from the date of judicial demand to the date of entry of judgment at the Louisiana rate of judicial interest and post-judgment interest at the rate provided for by Title 28, United States Code, Section 1961, from date of entry of judgment until paid.

**IT IS FURTHER ORDERED** that defendants Wood Group PSN, Inc., Bordelon Marine, LLC, and ENI U.S. Operating Co., Inc. are taxed with the costs of this proceeding, as may be permitted under 28 U.S.C. §1920, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.[1]

Defendants ENI, Bordelon Marine, and Wood Group filed the instant motion, arguing: (1) the award of $2,250,000 in general damages (past physical pain and suffering ($100,000); future pain and suffering ($1,500,000); past mental pain and suffering ($75,000); future mental pain and suffering ($225,000); past physical

---

[1] *See* Judgment, Doc. 137.

disability, impairment and inconvenience ($25,000); future physical disability, impairment and inconvenience ($75,000); past loss of enjoyment of life ($25,000); future loss of enjoyment of life ($200,000) is excessive. [Doc. 139]. Plaintiff opposes the motion. Defendants have filed a reply brief, in response to which Plaintiff filed a sur-reply.

## II. Legal Analysis

Under Federal Rule of Civil Procedure 59(a), a motion for new trial in a jury case may be granted "for any reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Thus, a new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course. *See, e.g., Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). *See also Wright v. National Interstate Ins. Co.*, 2018 WL 2017567, at *3 (E.D. La. 2018). "A district court, however, should attempt to avoid substituting its judgment for the jury's considered verdict, so as to not violate the parties' Seventh Amendment rights." *McFadden v. Wal-Mart Stores*, 2006 WL 3087164, at *2 (E.D. La. 2006). If the jury's verdict is 'clearly within the universe of possible awards which are supported by the evidence,' then a district court may not properly grant a new trial based merely on the inadequacy of the damage award.

*Brun-Jacobo v. Pan Am. World Airways, Inc.*, 847 F.2d 242, 246 (5th Cir. 1988). The Fifth Circuit has stated that it will not interfere with the fact finder's award of damages unless it is so " inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Munn v. Algee*, 924 F.2d 568, 578 (5th Cir. 1991), *citing Taylor v. Green*, 868 F.2d 162, 164 (5th Cir. 1989).

The Fifth Circuit has repeatedly held that the decision to grant or deny a motion for new trial is within the sound discretion of the trial court and is not subject to review on appeal, other than for an abuse of discretion. *Young v. City of New Orleans*, 751 F.2d 794, 798 (5th Cir. 1985). "Reconsideration of a judgment is an extraordinary remedy which should be used sparingly. Rule 59 motions may not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to entry of the judgment. *Campbell v. St. Tammany Parish School Bd.*, 1999 WL 777720, at *1 (E. D La. 1999).

The trial court's discretion to grant a new trial "includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). The Fifth Circuit has further specified ". . . when a jury verdict results from passion

or prejudice, a new trial is the proper remedy. When a damage award is merely excessive or so large as to appear contrary to right reason, remittitur is the appropriate remedy." *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir.2003), *citing Brunnemann v. Terra Int'l., Inc.*, 975 F.2d 175, 178 (5th Cir.1992). As previously stated, in this matter defendant does not argue, and the Court does not find, the jury verdict was the result of "passion or prejudice."

### A. Motion for New Trial

To the extent that the defendants' motion is properly considered as a motion for new trial, the Court finds that the motion has no merit. "A jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonably jury to find' as the jury did." *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997), quoting Fed.R.Civ. 50(a)(a). The Court should consider all of the evidence . . . in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Guilbeau v. W.W. Henry, Co.*, 85 F.3d 1149, 1161 (5th Cir. 1996). It is the jury's responsibility to weigh conflicting evidence, draw inferences from that evidence, and determine the relative credibility of the witnesses. Granting a motion is proper only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *See Guitierrez v. Excel Corp.*, 106 F.3d 683, 686 (5th Cir. 1997).

After considering the evidence adduced at trial, and with the deferential standard of review in mind, the Court finds the jury's verdict is supportable by a fair interpretation of the evidence and will, therefore, not be set aside.

## B.  Motion for Remittitur

In *Theodile v. Delmar Sys., Inc.*, 2007 WL 2491808, at *2 (W.D. La. 2007), the district court set forth the two historical frameworks for analyzing claims of remittitur, as follows:

> When analyzing whether a remittitur is appropriate, this Court notes (as did Judge Barbier in *Campbell v. England*, 2005 WL 1400465 (E.D.La.), *rev'd on other grounds*, 2007 WL 1454542 (5th Cir.) (*per curiam*)), the Fifth Circuit has endorsed two seemingly contradictory methods for evaluating the propriety of a jury award: (1) the "maximum recovery rule," and (2) (using J. Barbier's terminology) "the clearly excessive rule." *Id.* at *2. Under the "maximum recovery rule," when the jury's award is excessive, the court should reduce the verdict "to the maximum amount the jury could properly have awarded." *Dixon v. International Harvester Co.*, 754 F.2d 573, 590 (5th Cir.1985). The maximum amount is determined by comparing the award under scrutiny to awards in other cases for similar injuries. *See e.g. Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir.2002) ("A mainstay of the excessiveness determination is comparison to awards for similar injuries."), *citing Dixon* at 589; *Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 369 (5th Cir.2002). "This comparison is limited to cases in the 'relevant jurisdiction.'" *Salinas* at 830, *citing Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1339 (5th Cir.1990) ("... we compare damages awarded in factually similar cases, and arising within the controlling jurisdiction, in order to construct an objective framework for comparison."). *See also Vogler v. Blackmore*, 352 F.3d 150 (5th Cir.2003). In certain cases, a multiplier is then applied to arrive at the maximum recovery amount. *See e.g. Salinas* at 8314; *Thomas* at 369. The district court then suggests

plaintiff accept the remitted amount. If plaintiff declines, he is entitled to a new trial on damages alone. *See e.g. Dixon* at 590 and citations therein.

Under the "clearly excessive rule," the appellate courts . . . "do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1356 (5th Cir.1988); *Hale v. Fish*, 899 F.2d 390, 403 (5th Cir.1990). *See also Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 374 n. 5 (Dennis, J ., concurring in result, but disagreeing with the majority's review of excessiveness of the award by comparison to prior cases and citing Fifth Circuit cases in support of his argument).

*Theodile v. Delmar Sys., Inc.*, 2007 WL 2491808, at *3 (W.D. La. Aug. 31, 2007).

After explaining the history of each line of analysis, the district court concluded that a hybrid of the two approaches should be used to determine whether remittitur is appropriate, to wit:

Given the murky guidance found in the more recent jurisprudence, this Court suggests the proper approach to remittitur heralds from the original line of thought. Indeed, it seems when the jurisprudence is traced back to its origins, the approach began as a combination of today's two divergent methods, but has, in subsequent years, been separated into two distinct methods of analysis. ***Therefore, this Court will evaluate this matter as follows: the case will be reviewed on its specific facts (viewing the medical testimony in the light most favorable to plaintiff), but an analysis of similar cases, brought in the relevant jurisdiction (the Fifth Circuit), shall provide a frame of reference to aid the Court in its determination of whether the damages awarded in this matter (under its specific facts) are excessive as a matter of law.***

*Theodile*, 2007 WL 2491808, at *4 (emphasis added).

In their motion, the defendants do not set forth the governing legal standard, but rather, simply argue that under Rule 59, an excessive award that "shocks the judicial conscience" should be reduced. In their response, the plaintiff sets forth the two legal approaches espoused by courts in considering remittitur motions. It is not until their reply brief that the defendants take the position that the "clearly excessive" rule governs this case, after the plaintiff argues in his brief that the "maximum recovery" rule governs. The crux of the defendants' motion is that the damages awarded by the jury were excessive. After a review of the cases cited in *Theodile*, this Court will use the method espoused in *Theodile* to determine whether remittitur is appropriate in this case.

The jury awarded Mr. Hale $2,225,000 in general damages, as follows: past physical pain and suffering ($100,000); future pain and suffering ($1,500,000); past mental pain and suffering ($75,000); future mental pain and suffering ($225,000); past physical disability, impairment, and inconvenience ($75,000); past loss of enjoyment of life ($25,000); future loss of enjoyment of life ($200,000). The jury's award was reduced by $323,866.60 for the 10% comparative fault assessed to the plaintiff.

In their brief, the defendants cite to cases in which they argue "similar injuries" were at issue and lower general damages were awarded in support of their argument

that the general damages awarded to the plaintiff in this case were excessive. *See, e.g., Theodile*, 2007 WL 2491808 (back injury with surgery recommendation, incontinence, depression, and a brain injury; general damage award of $1,250,000; court determined a remittitur of $650,000 was appropriate, with a resulting award of $600,000); *Cheramie v. Blake Workover & Drilling Co.*, 1996 WL 409223 (E.D.La. July 18, 1996) (back injury with surgery recommendation; incontinence, and depression; general damage award of $775,000; court determined any general damages award over $300,000 was excessive); *Averett v. Diamond Offshore Drilling Serv., Inc.*, 980 F.Supp. 855 (E.D. la. 1997) (ruptured disc that required surgery, depression, and sexual dysfunction; general damage award of $175,000); *Nettles v. Ensco Marine Co.*, 980 F.Supp. 848 (E.D. La. 1997) (disc herniation at L5-S1 that required surgery; aggravation of pre-existing chronic depression; general damages award of $150,000); *Broussard v. Stolt Offshore, Inc.*, 2007 WL 101041 (E.D. La. Jan.9, 2007) (back injury that required surgery, with a likely second surgery to re-graft the fusion; sexual dysfunction; general damages award of $400,000); *Williams v. Chevron USA, Inc.*, 875 F.2d 5010 (5th Cir. 1989) (two herniated discs in lower neck with recommendation of surgery; general damages award of $400,000 determined to be excessive by the Fifth Circuit, which found a remittitur to $200,000 as the maximum award was appropriate).

The defendants focus on two Fifth Circuit cases, arguing they "clearly demonstrate the excessiveness of the $2,250,000 general damage award in this case. In *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988), the plaintiff underwent two back surgeries, was confined to crutches for the remainder of his life, and suffered from arachnoiditis, spina bifida, and a displaced hip. The general damages award was $555,000. In *Hernandez v. M/V Rajaan*, 841 F.2d 582 (5th Cir. 1988), the plaintiff was paralyzed from the waist down, suffered "phantom pains" in his legs, underwent several painful surgical procedures, and would require more surgery in the future. The general damages award was $1,000,000.

In his response, the plaintiff argues that the cases cited by the defendants do not address injuries similar to those suffered by Mr. Hale, fail to factor in inflation, and are readily distinguishable. Mr. Hale argues that each of the cases cited dealt with injuries involving only one region of the spine, while Mr. Hale suffered injuries to all three vertebral regions, that is, his cervical spine, thoracic spine, and lumbar spine. The plaintiff argues his injuries include a debilitating injury to his thoracic spine with "potential grim treatment options and a resultant chronic pain syndrome due to his well-documented intrascapular pain." The plaintiff also argues his injuries will continue to cause pain, suffering, and loss of enjoyment of life for the remainder of his life, and are much more severe than the injuries in the cases cited by the

defendants. The plaintiff also points out the age of the cases cited – between 10 and 30 thirty years old – which do not factor in inflation. Specifically, with respect to the *Hernandez* decision, decided in 1988, the plaintiff notes that the $1,000,000 award in that case, adjusted for inflation, would now be $2,152,039.[2]

In support of his argument that the plaintiff's general damages award was not excessive, the plaintiff cites several cases involving similar injuries for the Court's review. Specifically, in *Raynes v. McMoRan Exploration Co.*, 2012 WL 1032902 (E.D. La. Mar. 27, 2012), *aff'd*, 508 Fed.App'x 285 (5th Cir. 2013), the plaintiff underwent epidural injections and two surgeries for a ruptured disc at one disc level, L4-5. The plaintiff was assessed a total body disability rating of 25%. The jury found that McMoRan's negligence was the legal cause of 100% of Raynes' damages and the jury awarded total general damages in the amount of $2,000,000. *Raynes*, 2012 WL 1032902, at *1. The defendants in that case sought a new trial on damages, but the Court denied the motion, and the Fifth Circuit affirmed in an unpublished decision. *Raynes v. McMoRan Exploration Co.*, 508 F. App'x 285 (5th Cir. 2013). Mr. Hale argues the plaintiff's injuries in *Raynes* were not as severe as his, as Mr. Raynes suffered injury to only his lumbar spine, while Mr. Hale suffered injuries to

---

[2] *See* Exhibit 1 to plaintiff's opposition memorandum, Doc. 155-1, entitled "Bureau of Labor Statistics Consumer Price Index Inflation Calculator."

his lumbar spine, thoracic spine, and cervical spine.  Mr. Hale was given a 30% total body disability rating, whereas Mr. Raynes was given a 25% total body disability rating.

Additionally, Mr. Hale notes the decision in *Raynes* was rendered in 2012, and that, adjusted for inflation, the award of $2 million in that case is now $2,170,877. The plaintiff argues as follows:

> Assuming *arguendo* that the injuries sustained by the plaintiff in *Raynes* are similar to, and [as] severe as, those sustained by Hale (which is denied), applying the "maximum recovery rule" multiplier of 150% to the $2,170,877 [] award in *Raynes* would result in a **$3,256,315 []** maximum recovery for injuries similar to those in *Raynes* – a maximum recovery amount of $1,031,315 *greater* than the $2,250,000 jury award in the case *sub judice*.[3]

In their reply brief, the defendants argue there is no binding precedent mandating an increase for inflation, and that factoring in inflation would be improper.

After considering the cases cited by the parties, this Court finds Hale's injuries, and the attendant pain and suffering and loss of enjoyment of life resulting from those injuries, are much more severe than those reflected by the facts of the cases the defendants have cited.  Besides the constant, often debilitating, pain that Hale must endure, and which will likely never improve, he faces potential future surgeries, or

---

[3] *See* plaintiff's brief in opposition to the motion for new trial, Doc. 155-1, at p. 10 (emphasis in original).

alternatively, three possible extreme thoracic surgical options with each surgical procedure having a high rate of morbidity and/or paralysis: (1) transthoracic discectomy surgery; (2) lateral extra cavity approach surgery; or (3) posterior thoracic approach surgery. Hale's other treatment options, if Hale declines his surgery alternatives on the basis of risk versus reward, were to undergo, for his lifetime, chronic pain management consisting of the insertion of an intrathecal pump to transmit narcotics directly into his spinal fluid, or the placement of a spinal cord stimulator to interfere with the pain signals sent to his brain, or undergo up to three epidural steroid injections a year for the remainder of his lifetime. The cases presented by the defendants are not cases in which injuries to all three vertebral regions (cervical, thoracic, and lumbar) were present, as is the case for Hale. Thus, when considering the totality of the plaintiff's injuries in this case, the Court is unable to conclude that the jury's verdict "shocks the conscience" or that the jury's general damages award was excessive.

With respect to the issue of inflation, the plaintiff cites an unpublished Fifth Circuit case – *Ledet v. Smith Marine Towing Corp.*, 455 Fed. App'x. 417 (5th Cir. 2011) – in which the appellate court, considering a remittitur motion, adjusted a $475,000 verdict in 1987 to $946,750 in 2011, using the Bureaux of Labor Statistics's CPI Inflation Calculator, as the plaintiffs have done here. Moreover, the Court finds

it necessary, reasonable, and proper – when considering cases that were decided *thirty years ago* and are posited for the purposes of *comparing judgments* – to factor in the concept of inflation. The defendants have cited no cases supporting their argument, and this Court finds it axiomatic that jury awards from the 1980s for similar injuries would not be supported in the present day. Therefore, the defendants' argument on this point – devoid of legal support or any authority for the proposition that factoring in inflation is improper, and further considering *Ledet* – is not persuasive.

Finally, in their reply brief, the defendants refer extensively to this Court's pre-trial ruling excluding evidence related to the plaintiff's use of prescription medication on the date of the accident and prior to the accident as a result of a previous unrelated shoulder injury for which he was treated by Dr. Vidrine. The defendants appear to suggest that they would have controverted the medical testimony put on by the plaintiff regarding the extent of the plaintiff's injuries, but chose not to because of the Court's pre-trial ruling excluding any reference to the plaintiff's use of his prescription medications. Arguing that the medical records of Dr. Steven Vidrine are "littered with references to complainant's opiod use," as well as his prior low back and shoulder pain, defendants argue that had they been permitted to introduce Dr. Vidrine's records, the jury would not have awarded general damages in the amount it did.

In making this argument, defendants are attempting – yet again – to make an end run around this Court's ruling that the plaintiff's use of prescription medication on the date of the accident – in the manner in which the defendants intended to use it at trial – was more prejudicial than relevant to the claims at issue in the case. This Court did not exclude the testimony of Dr. Vidrine, nor was it asked to. Although the defendants listed Dr. Vidrine as a witness in their pretrial order, they chose, for whatever reason, not to call Dr. Vidrine to testify at trial. Instead, the defendants chose to cross-examine Dr. Erich Wolf – the plaintiff's treating physician – as to certain aspects of Dr. Vidrine's records. Thus, the jury heard both the testimony of Dr. Wolf and the cross-examination by the defendants with respect to Dr. Vidrine's records.

What this Court *did* exclude was evidence of the positive drug screen of the plaintiff on the date of the accident – sought to be introduced by the defendants via a *different* expert, not Dr. Vidrine – and any references to Mr. Hale's use of his prescription medication, both prior to and at the time of the accident, given this Court's ruling that such evidence was not probative of any issues of impairment on the part of the plaintiff at the time of the accident, and because the evidence was highly prejudicial to the plaintiff. In now arguing that the defendants were unable to mount a defense to the plaintiff's claims because this Court did not allow them to put

on Dr. Vidrine, the defendants are – yet again – attempting to sidestep this Court's pre-trial evidentiary rulings.[4] The trial strategy employed by the defendants when presenting their case is not appropriately considered when addressing a remittitur motion. The law is well-settled that Rule 59 motions may not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to entry of the judgment. *Campbell v. St. Tammany Parish School Bd.*, 1999 WL 777720, at *1 (E. D. La. 1999). Consequently, the Court finds this argument is unpersuasive as well.

This Court was intimately familiar with the facts of this case over a three-year period—from the time the original complaint was filed on June 2, 2015, until the jury rendered its verdict on January 30, 2018. The Court heard and considered the testimony and evidence that was presented to the jury. The Court carefully observed Hale during the trial's pendency and found Hale to be a credible witness. The jury thoughtfully and carefully considered all of the evidence that was presented to it. Considering the foregoing, and in light of the deferential standards that govern this motion, the Court concludes that the general damages awarded by the jury was not

---

[4] This Court notes that defense counsel conceded at the pre-trial conference that the plaintiff's use of prescription medications prior to the accident at issue in the lawsuit was incident to a separate and unrelated shoulder injury that took place in either 2006 or 2007. *See* Official Transcript of Pre-Trial Conference on December 15, 2017, Doc. 99, at 39-45, 75-80.

excessive in this matter. Consequently, the motion for remittitur is DENIED.

## III. Conclusion

Thus, for the reasons stated in this Ruling, the Rule 59 Motion of defendants,

ENI US Operating Co., Inc., Bordelon Marine, LLC, and Wood Group PSN, Inc., for

a New Trial on Damages, or Alternatively, for Remittitur with respect to the

Judgment entered on February 1, 2018 [Doc. 139] is DENIED.

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 25th day of

September, 2018.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**